**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| **QUANTREVIOUS RAHEEM RAY,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **No. 5:26-cv-259-TES-CHW** |
| | : | |
| **Warden SHAWN EMMONS,** *et al.*, | : | |
| | : | |
| | : | |
| **Defendants.** | : | |

## ORDER AND RECOMMENDATION

Plaintiff Quantrevious Raheem Ray, an inmate at the Emmanuel Probation Detention Center in Twin City, Georgia, filed a complaint under 42 U.S.C. § 1983. ECF No. 1. Because Plaintiff did not submit his pleading on the standard § 1983 complaint form, pay the filing fee, or move to proceed in forma pauperis ("IFP"), the Court ordered that he file a recast his complaint and either pay the filing fee or submit a properly completed motion to proceed IFP. ECF No. 3 at 1. Subsequently, Plaintiff filed a recast complaint (ECF No. 5) and motion to proceed IFP (ECF No. 6). For the reasons stated below, Plaintiff's motion to proceed IFP is granted, and his complaint is ripe for preliminary review. On preliminary review, Plaintiff shall be allowed to proceed on his conditions of confinement claims. However, it is recommended that his remaining claims be dismissed without prejudice.

## MOTION FOR LEAVE TO PROCEED IFP

Plaintiff seeks leave to proceed without prepayment of the filing fee or security

therefor pursuant to 28 U.S.C. § 1915(a).   ECF No. 6.   As it appears Plaintiff is unable to pay the cost of commencing this action, his application to proceed IFP is **GRANTED**.

However, a prisoner allowed to proceed IFP must still pay the full amount of the $350.00 filing fee.   28 U.S.C. § 1915(b)(1).   If the prisoner has sufficient assets, he must pay the filing fee in a lump sum.   If sufficient assets are not in his trust account, the court must assess an initial partial filing fee based on the assets available.   Despite this requirement, a prisoner may not be prohibited from bringing a civil action because he has no assets and no means by which to pay the initial partial filing fee.   28 U.S.C. § 1915(b)(4).   In the event the prisoner has no assets, payment of the partial filing fee prior to filing will be waived.

Plaintiff's submissions indicate that he is unable to pay the initial partial filing fee. Accordingly, it is hereby **ORDERED** that his complaint be filed and that he be allowed to proceed without paying an initial partial filing fee.

## I.    Directions to Plaintiff's Custodian

Plaintiff is required to make monthly payments of 20% of the deposits made to his prisoner account during the preceding month toward the full filing fee.   The clerk of court is **DIRECTED** to send a copy of this Order to the business manager of the facility in which Plaintiff is incarcerated.   It is **ORDERED** that the warden of the institution in which Plaintiff is incarcerated, or the sheriff of any county in which he is held in custody, and any successor custodians, shall each month cause to be remitted to the clerk of this Court twenty percent (20%) of the preceding month's income credited to Plaintiff's account at said institution until the $350.00 filing fee has been paid in full. 28 U.S.C. § 1915(b)(2).   In

accordance with provisions of the Prison Litigation Reform Act ("PLRA"), Plaintiff's custodian is authorized to forward payments from the prisoner's account to the clerk of court each month until the filing fee is paid in full, provided the amount in the account exceeds $10.00. It is **ORDERED** that collection of monthly payments from Plaintiff's trust fund account continue until the entire $350.00 has been collected, notwithstanding the dismissal of Plaintiff's lawsuit or the granting of judgment against him prior to the collection of the full filing fee.

## II.    Plaintiff's Obligations Upon Release

Plaintiff should keep in mind that his release from incarceration/detention does not release him from his obligation to pay the installments incurred while he was in custody. Plaintiff remains obligated to pay those installments justified by the income in his prisoner trust account while he was detained. If Plaintiff fails to remit such payments, the Court authorizes collection from Plaintiff of any balance due on these payments by any means permitted by law. Plaintiff's Complaint may be dismissed if he is able to make payments but fails to do so or if he otherwise fails to comply with the provisions of the PLRA.

## PRELIMINARY REVIEW OF PLAINTIFF'S COMPLAINT

## I.    Standard of Review

The PLRA directs courts to conduct a preliminary screening of every complaint filed by a prisoner who seeks redress from a government entity, official, or employee. 28 U.S.C. § 1915A(a). Courts must also screen complaints filed by a plaintiff proceeding IFP. 28 U.S.C. § 1915(e). Both statutes apply in this case, and the standard of review is the same. "*Pro se* filings are generally held to a less stringent standard than those drafted

3

by attorneys and are liberally construed." *Carmichael v. United States*, 966 F.3d 1250, 1258 (11th Cir. 2020) (citation omitted). Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e).

A claim is frivolous if it "lacks an arguable basis either in law or in fact." *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (citations omitted). On preliminary review, the Court may dismiss claims that are based on "indisputably meritless legal" theories and "claims whose factual contentions are clearly baseless." *Id.* (citations omitted). A claim can be dismissed as malicious if it is knowingly duplicative or otherwise amounts to an abuse of the judicial process. *Daker v. Ward*, 999 F.3d 1300, 1308, 1310 (11th Cir. 2021) (affirming dismissal of duplicative complaint "in light of [prisoner's] history as a prolific serial filer").

A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citations omitted). In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id.* at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *See, e.g.*, *Bingham v. Thomas*, 654 F.3d 1171, 1176-77 (11th Cir. 2011) (per curiam) (affirming dismissal of certain claims at preliminary screening because prisoner failed to allege sufficient facts to show a violation of his rights), *abrogated on other grounds by Wade v. McDade*, 106 F.4th 1251, 1255 (11th Cir. 2024) (en banc).

## II.    Factual Allegations

Plaintiff's claims arise from his incarceration at Georgia Diagnostic and Classification Prison ("GDCP"), also known as Jackson State Prison, from January 9, 2025, to approximately May 15, 2025.   ECF No. 5 at 5.[1]   Plaintiff alleges that during the time he was at GDCP, he was housed in a cell that had "no electricity—resulting in pitch black conditions as soon as the sunlight or day went away." *Id.*   He also alleges that all of the windows were "broken out" such that rain and snow fell on him. *Id.*; ECF No. 5-1. Further, he was subjected to "extremely cold" conditions—including temperatures as low

---

[1]The Recast Complaint (ECF No. 5) is the operative pleading in this case. *See Pintando v. Miami-Dade Hous. Agency*, 501 F.3d 1241, 1243 (11th Cir. 2007) (holding that generally, "[a]n amended pleading supersedes the former pleading; the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averment against his adversary" (alteration in original) (citation omitted)).

as ten degrees—without adequate clothing or shelter.  ECF No. 5-1.  Finally, there were no working sinks or toilets, requiring him to "live and sleep in close confines with fecal matter[]."  *Id.*  Plaintiff contends that Defendants Warden Whitters and Warden Emmons were aware of the conditions from their daily routine inspections and staff reports.[2]  ECF No. 1 at 6.

### III.    Plaintiff's Claims

####    A.    Conditions of Confinement

Plaintiff's allegations raise claims related to the conditions of his confinement. The Eighth Amendment governs the conditions under which convicted prisoners are confined and the treatment that they receive while incarcerated.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  Although the Eighth Amendment does not require comfortable prisons, it does prohibit inhumane ones.  *Id.*  Moreover, the Eighth Amendment guarantees that prisoners will not be "deprive[d] . . . of the minimal civilized measure of life's necessities."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "[B]asic human necessities include food, clothing, shelter, sanitation, medical care, and personal safety." *Collins v Homestead. Corr. Inst.*, 452 F. App'x 848, 850-51 (11th Cir. 2011) (per curiam) (citing *Harris v. Thigpen*, 941 F.2d 1495, 1511 (11th Cir. 1991)).

"To state a conditions-of-confinement claim, a plaintiff must plausibly allege: (1) a

---

[2]Although Plaintiff specifically identifies "Unit Manager Sumpter" as a witness who was also aware of the conditions at GDCP, he does not identify him as a defendant either in the caption of the recast complaint or in the portion of the form complaint where he is directed to list each defendant.  ECF No. 1 at 1, 4.  Therefore, the Court does not construe Plaintiff's recast complaint as asserting claims against Sumpter.

substantial risk of serious harm; (2) deliberate indifference to that risk; and (3) causation." *Faircloth v. Bibb Cnty., Ga.*, No. 5:25-CV-440-MTT, 2026 WL 228018, at *4 (M.D. Ga. Jan. 28, 2026) (first citing *Goodman v. Kimbrough*, 718 F.3d 1325, 1331 (11th Cir. 2013); and then citing *Bowen v. Warden Baldwin State Prison*, 826 F.3d 1312, 1320 (11th Cir. 2016)). The first element—a substantial risk of serious harm—is assessed under an objective standard, requiring that the Plaintiff allege deprivations that are "'sufficiently serious' to constitute a denial of the 'minimal civilized measure of life's necessities.'" *Thomas v. Bryant*, 614 F.3d 1288, 1304 (11th Cir. 2010) (quoting *Farmer*, 511 U.S. at 834). "[T]o make out a claim for an unconstitutional condition of confinement, 'extreme deprivations' are required[.]" *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). This standard is only met when the challenged conditions present "'an unreasonable risk of serious damage to [the prisoner's] future health' or safety," or if "'society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk.'" *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (quoting *Helling v. McKinney*, 509 U.S. 25, 35-36 (1993)).

To satisfy the second element—deliberate indifference—a plaintiff must plausibly allege that the defendant: (1) "was subjectively aware that the inmate was at risk of serious harm"; (2) "disregarded that risk"; and (3) "acted with 'subjective recklessness as used in the criminal law[.]'" *Wade*, 106 F.4th at 1255 (first citing *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1270 (11th Cir. 2020); and then quoting *Farmer*, 511 U.S. at 839)).

The third element—causation—requires that a plaintiff show "an affirmative causal connection between the actions taken by a particular person 'under color of state law' and

7

the constitutional deprivation." *LaMarca v. Turner*, 995 F.2d 1526, 1538 (11th Cir. 1993) (quoting *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982)).    This inquiry "focuses . . . on whether an official's acts or omissions were the cause—not merely a contributing factor—of the constitutionally infirm condition." *Id.*

Plaintiff's allegations that he was housed for an extended period of time (1) without working electricity that left him in total darkness, (2) without adequate shelter that left him exposed to the elements and extreme cold, and (3) without basic sanitation such that he was exposed to raw sewage, are sufficient to allow his Eighth Amendment conditions of confinement claims against Defendants—who were aware of the conditions and presumably in a position to remedy them—to proceed for further factual development. *See Powell v. Washington*, 720 F. App'x 222, 228 (6th Cir. 2017) (per curiam) ("[T]he alleged deprivation of adequate lighting in [an inmate's] cell for thirty-five days is sufficiently extreme to state an Eighth Amendment claim."); *Martin v. Snyder*, No. 00 C 983, 2002 WL 484911, at *6-7 (N.D. Ill. Mar. 28, 2002) (denying motion to dismiss where the inmate alleged that he spent five months in a cell with a non-functional light and a small window which allowed only minimal ambient light to enter, leaving him in near total darkness for 12-14 hours a day); *Zavala v. Ward*, 5:19-CV-383-TES-CHW, 2020 WL 13982711, at *5 (M.D. Ga. Apr. 2, 2020) ("A prisoner may state a cognizable Eighth Amendment claim by alleging that prison officials have subjected him to extreme temperatures in his cell." (citing *Bennett v. Chitwood*, 519 F. App'x 569, 574 (11th Cir. 2013))), *recommendation adopted by* 2020 WL 13982712 (M.D. Ga. Apr. 22, 2020); *Dixon v. Godinez*, 114 F.3d 640, 642-45 (7th Cir. 1997) ("[P]risoners have a right to protection

from extreme cold." (reversing grant of summary judgment in light of the inmate's "unrefuted testimony that ice persistently formed on the walls of the cells")); *Brooks v. Warden*, 800 F.3d 1295, 1303 (11th Cir. 2015) ("This Court . . . [has] long recognized a well established Eighth Amendment right not to be confined . . . in conditions lacking basic sanitation." (second ellipsis in original) (quotation marks omitted)); *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) ("Exposure to human waste, like few other conditions of confinement, evokes both the health concerns emphasized in *Farmer* and the more general standards of dignity embodied in the Eighth Amendment.").

B.      Access to Courts

Plaintiff alleges that he filed a grievance about conditions at GDCP, but Thomas Draper, a Crisp County deputy, confiscated and destroyed Plaintiff's copy of the grievance, thus depriving him of evidence to present to the courts.   ECF No. 5-1.   Plaintiff contends that this violates his First Amendment right to access to the courts.   *Id.*

"Access to the courts is clearly a constitutional right, grounded in the First Amendment, the Article IV Privileges and Immunities Clause, the Fifth Amendment, and/or the Fourteenth Amendment."   *Chappell v. Rich*, 340 F.3d 1279, 1282 (11th Cir. 2003) (per curiam) (first citing *Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002); and then citing *Bank of Jackson Cnty. v. Cherry*, 980 F.2d 1362, 1370 (11th Cir. 1993)). "To have standing to seek relief under this right, however, a plaintiff must show actual injury by 'demonstrat[ing] that a nonfrivolous legal claim ha[s] been frustrated or . . . impeded.'"   *Jackson v. State Bd. of Pardons & Paroles*, 331 F.3d 790, 797 (11th Cir. 2003) (alterations and ellipsis in original) (citing *Lewis v. Casey*, 518 U.S. 343, 353

9

(1996)).   Plaintiff's alleged facts must demonstrate that litigation in a qualified legal action, i.e., a nonfrivolous criminal trial or appeal, habeas proceeding, or § 1983 action, was impeded by the state official's action or inaction.   *See Al-Amin v. Smith*, 511 F.3d 1317, 1332-33 (11th Cir. 2008), *abrogated in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). "[E]xamples of actual injury regarding prospective or existing litigation [are] missing filing deadlines or being prevented from presenting claims."   *Wilson v. Blankenship*, 163 F.3d 1284, 1290 n.10 (11th Cir. 1998) (citations omitted).

Here, the Court construes Plaintiff's complaint as alleging that destruction of his copy of the grievance deprived him of evidence to present to the Court in his § 1983 claims.[3]   ECF No. 5-1.   Presumably, Plaintiff is referring to the requirement that prisoners exhaust their administrative remedies prior to filing suit.   *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). However, as Plaintiff admits, the Georgia Department of Corrections ("GDC") should have a copy of any grievance he filed on record, and he should be able to obtain the evidence from defense counsel or the Court if the need arises.   ECF No. 5-1.   Therefore, because Plaintiff can show no actual injury, it is recommended that his access to courts claim be

---

[3]Plaintiff does not allege that the destruction of his copy of the grievance denied him access to the grievance process itself, and even if he did, such allegation would fail to state a claim for relief.  *See Bingham*, 654 F.3d at 1177 (holding that a prisoner has no constitutionally-protected liberty interest in access to a grievance procedure).

10

dismissed.

     C.    <u>Conspiracy</u>

Plaintiff asserts a claim for "conspiracy to interfere with civil rights," alleging that Defendants were aware of the conditions at GDCP prior to his arrival but were indifferent to his health by placing him there anyway.   ECF No. 5-1.

"Conspiring to violate another person's constitutional rights violates section 1983." *Rowe v. Fort Lauderdale*, 279 F.3d 1271, 1283 (11th Cir. 2002) (citations omitted).   To state a conspiracy claim under § 1983, a plaintiff must (1) "show that the parties reached an understanding to deny the plaintiff his or her rights" and (2) "prove an actionable wrong to support the conspiracy."   *Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty, Fla.*, 956 F.2d 1112, 1122 (11th Cir. 1992) (quotation marks and citation omitted); *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1260 (11th Cir. 2010) (citations omitted).   However, "[i]t is not enough to simply aver in the complaint that a conspiracy existed.   A complaint may justifiably be dismissed because of the conclusory, vague and general nature of the allegations of conspiracy."   *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) (citations omitted).

Plaintiff's allegations are too vague and conclusory to state a claim.   "[T]he linchpin for conspiracy is agreement, which presupposes communication[.]"   *Bailey*, 956 F.2d at 1122.   Plaintiff's complaint does not offer any specifics as to when or how Defendants communicated and reached an agreement to violate Plaintiff's constitutional rights.   Plaintiff's conclusory reference to a "conspiracy," without any allegations of communications between Defendants is simply not enough to state a claim.   *See Ashcroft*,

556 U.S. at 678   ("[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

    D.    <u>Failure to Protect Rights of Person with Mental Illness/Disability</u>

Plaintiff also asserts that Defendants failed to protect "the rights of a person with a mental illness" and "the rights of a person with a disability."   ECF No. 5-1.   He states that at the time of his incarceration at GDCP, he was "under the care of a mental health provider and was diagnosed with manic bipolar, medium major depressive disorder, [and] anxiety" and that he "receive[d] a new diagnosis of P.T.S.D. at Jackson State Prison during this time."   *Id.*

Again, Plaintiff's allegations are vague and conclusory.   It is not clear how his allegations regarding deliberate indifference to his mental health differ from his allegations regarding his conditions of confinement.   It may be that Plaintiff is attempting to assert a claim for deliberate indifference to a serious medical need.   "To prevail on a deliberate indifference to serious medical need claim, [p]laintiffs must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury."   *Mann v. Taser Inter., Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009).   To satisfy the deliberate indifference element a plaintiff must plausibly allege that the defendant: (1) "was subjectively aware that the inmate was at risk of serious harm"; (2) "disregarded that risk"; and (3) "acted with subjective recklessness as used in the criminal law." *Wade*, 106 F.4th at 1255 (citations and quotation marks omitted).   "Subjective recklessness as used in the criminal law" requires the defendant to be "actually, subjectively aware that his own conduct caused a substantial risk of serious

12

harm to the plaintiff," although a defendant cannot be held liable for a constitutional violation if he responds reasonably to a risk of which he is aware.   *Id.* at 1262.

However, while Plaintiff points to serious mental health needs, he does not allege any facts showing that Defendants were deliberately indifferent to those needs or how such indifference caused injury.   Absent such allegations, any claim for deliberate indifference to his serious medical needs must be dismissed.

Plaintiff refers to the Americans with Disabilities Act, ("ADA"), 42 U.S.C. § 12101, *et seq.*, ECF No. 5 at 5, so it may be that he is seeking to assert an ADA claim.   Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."   42 U.S.C. § 12132.   State agencies and prisons are "public entities" which may be sued under the ADA.[4]   *United States v. Georgia*, 546 U.S. 151, 154 (2006).   To state a claim under the Title II of the ADA,

> a plaintiff generally must prove (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability.

*Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1083 (11th Cir. 2007).   But again, while

---

[4]Plaintiff cannot hold Defendants personally liable for any alleged ADA violations because "there is no individual capacity liability under Title II of the ADA[.]"   *Badillo v. Thorpe*, 158 F. App'x 208, 211 (11th Cir. 2005) (per curiam).   However, Plaintiff alleges that he seeks to bring hold Defendants liable in their individual *and* official capacities.   ECF No. 1 at 6.

Plaintiff alleges facts suggesting he could suffer from a disability, he does not explain how he was denied access to any prison program, service, or activity or suffered any discrimination because of any alleged disability. He has therefore failed to plead facts sufficient to establish an ADA claim, and it is recommended that any such claim he is attempting to assert in this action be dismissed.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to proceed IFP (ECF No. 6) is **GRANTED**, and his Eighth Amendment conditions of confinement claims against Defendants shall proceed for further factual development. It is **RECOMMENDED**, however, that his remaining claims be dismissed without prejudice.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations with United States District Judge to whom this case is assigned WITHIN FOURTEEN (14) DAYS after being served with a copy of this Recommendation. The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections. Objections to the Recommendation are limited in length to twenty (20) pages. A party seeking permission to exceed these limitations shall do so by filing a written motion no later than five (5) days in advance of the deadline for filing objections and by specifying the number of pages requested. Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made. See 11th Cir. R. 3-1.

14

## ORDER FOR SERVICE

As Plaintiff has made colorable constitutional violation claims against Defendants Emmons and Whitters, it is hereby **ORDERED** that service be made on Defendants and that they file an Answer, or such other response as may be appropriate under Rule 12, 28 U.S.C. § 1915, and the Prison Litigation Reform Act.   Defendants are reminded of the duty to avoid unnecessary service expenses, and of the possible imposition of expenses for failure to waive service pursuant to Rule 4(d).

## DUTY TO ADVISE OF ADDRESS CHANGE

During the pendency of this action, all parties shall keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address.   Failure to promptly advise the Clerk of a change of address may result in the dismissal of a party's pleadings.

## DUTY TO PROSECUTE ACTION

Plaintiff is also advised that he must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute.   Defendants are similarly advised that they are expected to diligently defend all allegations made against them and to file timely dispositive motions as hereinafter directed.   This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

## FILING AND SERVICE OF MOTIONS, PLEADINGS, AND CORRESPONDENCE

15

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court.  A party need not serve the opposing party by mail if the opposing party is represented by counsel.  In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court.  If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished.

**DISCOVERY**

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of the Defendant from whom discovery is sought by the Plaintiff.  The Defendant shall not commence discovery until such time as an answer or dispositive motion has been filed.  Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure.  The deposition of the Plaintiff, a state/county prisoner, may be taken at any time during the time period hereinafter set out provided prior arrangements are made with his custodian.  **Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Rule 37 of the Federal Rules of Civil Procedure.**

IT IS HEREBY ORDERED that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an

16

answer or dispositive motion by the Defendants (whichever comes first) unless an extension is otherwise granted by the court upon a showing of good cause therefor or a protective order is sought by the defendant and granted by the court. This 90-day period shall run separately as to Plaintiff and Defendants beginning on the date of filing of Defendants' answer or dispositive motion (whichever comes first). The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall not be filed with the Clerk of Court. No party shall be required to respond to any discovery not directed to him/her or served upon him/her by the opposing counsel/party. The undersigned incorporates herein those parts of the **Local Rules** imposing the following limitations on discovery: except with written permission of the court first obtained, **interrogatories** may not exceed TWENTY-FIVE (25) to each party, **requests for production of documents and things** under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and **requests for admissions** under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party. No party shall be required to respond to any such requests which exceed these limitations.

**IT IS FURTHER ORDERED** that Defendants comply with the attached "Required Disclosure of the Existence of Video or Photographic Evidence When Plaintiff Files Suit Against One or More Georgia Department of Corrections Employees Relating to Events That Occurred During Plaintiff's Incarceration within the Georgia Department of Corrections."

## REQUESTS FOR DISMISSAL AND/OR JUDGMENT

The Court shall not consider requests for dismissal of or judgment in this action, absent the filing of a motion therefor accompanied by a brief/memorandum of law citing supporting authorities.  Dispositive motions should be filed at the earliest time possible, but in any event no later than one hundred-twenty (120) days from when the discovery period begins unless otherwise directed by the Court.

**SO ORDERED and RECOMMENDED**, this 13th day of July, 2026.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge

18

**REQUIRED DISCLOSURE OF THE EXISTENCE OF VIDEO OR PHOTOGRAPHIC EVIDENCE WHEN PLAINTIFF FILES SUIT AGAINST ONE OR MORE GEORGIA DEPARTMENT OF CORRECTIONS EMPLOYEES RELATING TO EVENTS THAT OCCURRED DURING PLAINTIFF'S INCARCERATION WITHIN THE GEORGIA DEPARTMENT OF CORRECTIONS**

Counsel for the Defendants shall confer with the Defendants and with appropriate Georgia Department of Corrections ("GDC") staff, and no later than 30 days from the date of entry of this Required Disclosure file the following disclosures:

(1)    State whether, at the time of the incident alleged in the complaint, the facility had stationary or mounted cameras in the area where that incident allegedly occurred.

(2)    If so, state whether those cameras recorded the events alleged by Plaintiff, whether those recordings have been preserved, and the identity of the custodian of the recordings. If the recordings have not been preserved, explain in detail why.

(3)    State whether body-worn or handheld cameras recorded the events alleged by Plaintiff, whether those recordings have been preserved, and identify the custodian of the recordings.  If the recordings have not been preserved, explain in detail why.

(4)    If Plaintiff complains of a use of force (either anticipated, spontaneous, or unanticipated) as that term is defined in the GDC Standard Operating Procedure, Use of Video Recording Equipment, Policy No. 204.11, and the GDC Standard Operating Procedure, Use of Force and Restraint for Offender Control, Policy No. 209.04, identify the custodian of any recordings of the events alleged.  If there are no available recordings, explain in detail why the events were not recorded or, if recorded but no longer available, why the recordings were not preserved.

(5)    Identify all GDC employees contacted to gather the information required by this disclosure.

Counsel is directed to preserve all video recordings and any photographs that may have captured the events giving rise to the complaint.  Failure to do so may result in the imposition of sanctions.